John Kennedy BAREFIELD, Appellant,

v.

The STATE of Texas, Appellee.

No. 69664.

Court of Criminal Appeals of Texas, En Banc.

Dec. 6, 1989.

Roger Bridgwater, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Carl M. Cameron, Ned Morris and Chuck Noll, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BERCHELMANN, Judge.

Appellant was indicted, convicted and sentenced to death for the abduction and murder of Cindy Renee Rounsaville. Appellant raises ten points of error on appeal. In his first two points, appellant contends that his videotaped confessions were erroneously admitted at trial for their failure to comport with the requirements of art. 38.22 Tex.Code Crim.Proc.Ann. Appellant's third and fourth points complain that the trial court erroneously excused for cause two prospective jurors. Fifth, appellant complains of the admission of an out of state pen packet during the punishment phase of trial. In his sixth and seventh points, appellant contends that the death penalty is cruel and unusual punishment, and that the prosecutor's discretion to seek the death penalty is an unconstitutional invasion upon the legislative branch. Appellant's remaining points of error complain that photographs of the deceased admitted at trial were offered solely to inflame the jury. We will affirm.

The State introduced into evidence two edited video taped statements made by appellant, from which the following facts were adduced at trial. In the early evening hours of April 21, 1986, Cindy Renee Rounsaville left her apartment and proceeded to her car. At the same time, Appellant and two co-defendants drove through the parking lot and spotted Rounsaville. Appellant and one co-defendant, Ernest Lee Sonnier, accosted Rounsaville at gunpoint and ordered her to get into her car. Appellant drove the victim's car as Sonnier guarded her in the backseat. The third man involved, appellant's brother, followed behind in the other car. Appellant drove the woman to an automated teller machine and forced her to withdraw all of the funds from her account. Appellant also stole the woman's Rice University graduation ring, while Sonnier took her engagement ring. After forcing her to get back in the car, appellant drove Rounsaville to a darkened street and parked the car. Appellant's brother followed in the second vehicle. A discussion ensued between the three men concerning the victim's fate. Because Rounsaville had seen all three of them, the men decided they "might as well" go ahead and sexually assault her. The men took turns sexually assaulting Rounsaville in the back seat of her car. Following the sexual assaults, the three men again discussed Rounsaville's fate, at which point Rounsaville leaped from the car and started running across the field. Appellant chased after Rousanville and fired a nonfatal shot at close range, striking the woman in the left side of the head. After observ-

ing that the victim was still moving, appellant fired a second shot at close range, striking the right side of Rousanville's head. Dr. Joseph Jachimczyck, Harris County Medical Examiner, testified at trial that the second shot destroyed a major portion of Rounsaville's brain, causing her death in a matter of a few minutes. The three men left the woman to die in the field. Her body, nude from the waist down, was found by a city employee mower operator the following day.

After shooting the woman, appellant drove Rounsaville's car to another field and set it on fire. The three men thereafter fled in the second vehicle. In May of 1986, appellant was arrested for an unrelated case and was found in possession of Rounsaville's Rice University graduation ring and a .22 caliber pistol later positively identified as the murder weapon. Upon questioning, appellant confessed to the abduction, robbery, sexual assault and murder of Cindy Renee Rounsaville.

Appellant's first and second points of error complain that the trial court erred in admitting appellant's video taped confessions for the tapes failure to comply with art. 38.22 Sec. 3(a)(2) Tex.Code Crim.Proc. Ann. because the tapes do not contain an express waiver of his rights. Specifically, he urges this Court to construe art. 38.22 Sec. 3(a)(2) to require that electronically recorded confessions contain an express waiver of rights. Appellant acknowledges that this Court has never so interpreted the statute.

Section 3(a) of art. 38.22 states that no oral confession of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless certain requirements are met. One such requirement is found in art. 38.22 Sec. 3(a)(2) which states:

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

Art. 38.22 Sec. 2(a) sets forth the requisite warnings:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.-17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time;

Tex.Code Crim.Proc.Ann. art. 38.22 Sec. 2(a).

A review of the video tapes reflect that during the recordings and before the statements were made appellant was given the statutory warnings. Appellant affirmatively acknowledged that he understood those warnings. During the recordings appellant was not specifically asked, nor did he specifically volunteer, that he waived those rights.

It is undisputed, however, that appellant was adequately advised of his rights as set forth in art. 38.22 Sec. 2(a). Likewise, it is uncontested that appellant fully understood those warnings, and that appellant was given an opportunity to ask any questions regarding the warnings prior to making the confession. There is no contention that appellant was coerced, nor is there any allegation that appellant was promised anything in exchange for the confession. Instead, appellant urges that this Court interpret the waiver provision of Sec. 3(a)(2) to mandate an express statement from an accused that he waives those rights. We do not, however, interpret the oral confession statute to require an express verbal statement from an accused that he waives his rights prior to giving the

statement. In reaching the voluntariness of a confession, this Court looks at the totality of the circumstances. *Berry v. State*, 582 S.W.2d 463, 465 (Tex.Cr.App. 1979). Dealing with a written confession, we have held that, under the totality of the circumstances, the State may establish waiver even where the waiver is not explicitly stated. *Williams v. State*, 566 S.W.2d 919, 923 (Tex.Cr.App.1978); *Moreno v. State*, 511 S.W.2d 273 (Tex.Cr.App.1974). In *Mays v. State*, 726 S.W.2d 937, 946 (Tex.Cr.App.1986), we held that a waiver to one's right to an attorney may be found in an express written or oral statement or may be inferred from actions and words of the person interrogated.

■ In the case at bar, the trial court entered findings of fact and conclusions of law regarding the voluntariness of the statements in question. Therein, the court concluded that each video taped statement was made by appellant after he knowingly, intelligently, and voluntarily waived his right to remain silent and his right to counsel as required in art. 38.22 Sec. 2(a) Tex. Code Crim.Proc.Ann., that the statements were not the product of promises or coercion and that they were admissible pursuant to Tex.Code Crim.Proc.Ann. art. 38.22 Sec. 3. The court's findings are supported by the record, and we therefore limit our inquiry to whether the court's conclusions properly applied the law to the facts. *Burdine v. State*, 719 S.W.2d 309, 318 (Tex.Cr. App.1986). Finding no error in the trial court's construction of Tex.Code Crim.Proc. Ann. art. 38.22 Sec. 3, we overrule appellant's first and second points of error.

Appellant next contends that the trial court erred in granting the State's challenge for cause to veniremember Billy Joe Jackson based on Jackson's disapproval of the death penalty. The State submits that appellant waived this point of error by failing to object prior to when the court sustained the State's challenge for cause. Notwithstanding the procedural default argument, the State also maintains that the challenge was constitutionally valid under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

■ Turning first to the State's waiver argument, we find that appellant's objection was sufficiently timely to preserve review in the voir dire context. If an appellant does not object when a veniremember is excused for cause, he may not challenge that ruling on appeal. *Guzmon v. State*, 697 S.W.2d 404, 412–13 (Tex.Cr.App.1985). The record reflects that appellant objected to the State's challenge to Jackson as follows:

[PROSECUTOR]: We present him for cause. Your Honor.

[DEFENSE]: For the record, go ahead I'm sorry. I was jumping the gun.

THE COURT: I'll sustain the challenge.

[DEFENSE]; Would you note the defendant's objections for the challenge for the excusing for cause, Your Honor.

THE COURT: Very well. Bring in [the next veniremember].

The State cites *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Cr.App.1988), and *Girndt v. State*, 623 S.W.2d 930 (Tex.Cr. App.1981), for the proposition that appellant failed to preserve error by not objecting before the trial court sustained the State's challenge for cause. Neither case, however, is dispositive of the issue. In *Purtell*, 761 S.W.2d at 366, this Court held that a defendant failed to preserve error where defense counsel "created the distinct impression that he was abandoning his opposition" to the State's challenge for cause. In the case at bar, appellant never vacillated on his opposition to veniremember Jackson. *Girndt*, 623 S.W.2d 930, dealt with the timeliness of an objection at trial, not in the voir dire context. Appellant objected before the veniremember was dismissed and prior to the questioning of the next veniremember. In the voir dire context, appellant's objection was sufficiently timely to preserve this issue for review.

■ We next turn to the merits of appellant's argument that veniremember Jackson was improperly excused for cause. The proper standard for excusing a prospective juror on the State's challenge for cause because of his views on capital punishment is whether those views would pre-

vent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath. *Wainwright v. Witt,* supra; *Knox v. State,* 744 S.W.2d 53, 58 (Tex.Cr.App.1987). A veniremember who is guided by personal views rather than the law is not qualified to sit on the jury panel. *Landry v. State,* 706 S.W.2d 105 (Tex.Cr.App.1985). In reaching a determination of the propriety of a court's ruling on a challenge for cause, we look to the entire voir dire of that veniremember. *Cordova v. State,* 733 S.W.2d 175, 179 (Tex.Cr.App.1987); *Barrow v. State,* 688 S.W.2d 860, 861 n. 1 (Tex.Cr. App.1985).

The record reflects that the Court questioned veniremember Jackson up until the point that Jackson indicated that he had religious, moral or conscious scrupples against the imposition of death sentences. The State thereafter extensively questioned Jackson regarding whether those beliefs would impair his ability to follow the law.

[THE PROSECUTOR]: Are you saying to the Court that you could not vote guilty on a case involving capital murder knowing that the death penalty would result?

A. That's exactly what I'm saying, sir.

Q. Is this feeling on your part so firm that you would automatically vote against the death penalty regardless of the facts in the case?

A. I don't believe in the death penalty so therefore I would have to vote against it.

\*      \*      \*      \*      \*      \*

Q. Am I correct in stating that your conviction is so firm and so sincere that no one is going to be able to talk you into changing that position no matter how hard they try?

A. Exactly.

Q. You're unalternatively, (sic) that is, completely opposed to the infliction of the death penalty, are you so opposed to it that you could not serve as a juror no matter what the facts are?

A. True. That's the way I believe.

In an apparent attempt to rehabilitate veniremember Jackson, defense counsel proposed a hypothetical wherein a person stood accused of sexually abusing and mutilating "a whole bunch" of three to four year old girls. Regarding the hypothetical, the following exchange occurred.

[DEFENSE COUNSEL]: You think that the situation that bad might be a proper case for, where you could participate in a jury that could assess that person the death penalty?

A. No, sir. I don't. Like I explain, I believe incarceration, but I don't believe in putting a person to death.

Q. So you just don't believe there is any situation no matter how bad where you could be a part of a jury that is as a result of the verdict that the defendant would receive death as punishment?

A. I wouldn't want to participate in it.

Q. Could you participate in such a case if you only had to decide the person's guilt or innocence of the crime?

A. I possibly could.

Q. All you would do is decide whether a person is guilty or innocent of that crime where you wouldn't have to be a part of the punishment phase?

A. I definitely wouldn't want to be a part of the punishment phase.

Where a veniremember expresses an inability to answer the special issues in the affirmative, regardless of what the evidence shows, there is a proper basis for granting the State's challenge for cause. *Faulder v. State,* 745 S.W.2d 327, 341 (Tex. Cr.App.1987). This remains true even where a prospective juror is capable of deciding the issue of guilt, but is incapable of deciding punishment. *Cordova,* 733 S.W.2d at 186.

■ The previously cited passages unequivocally establish that veniremember Jackson's personal views would prevent him from answering the special issues under even the most heinous fact situation. Where a potential juror is unable to resolve questions entrusted to him by the court he may be excluded for cause. Accordingly, the trial judge, who was in the best position to observe the demeanor of the venire-

member, properly granted the State's challenge for cause. *Id.* Appellant's third point of error is overruled.

■ In his fourth point for review, appellant asserts that the trial court erred in granting the State's challenge for cause to veniremember Lynne Schoepf based upon her disapproval of the death penalty. The State submits that appellant failed to preserve error by not objecting until after the court sustained the State's challenge. Furthermore, the State urges that even if the point is preserved, the trial court did not abuse its discretion in granting the challenge.

With respect to the waiver argument, we turn to the following objections to the challenge for cause of Ms. Schoepf.

[THE PROSECUTOR]: I offer the prospective juror for cause.

[THE COURT]: All right. I'll sustain the challenge.

[DEFENSE COUNSEL]: Your Honor, please note the defendant's objection to the challenge.

[THE COURT]: Very well, I'll note it. You may go.

[DEFENSE COUNSEL]: I just want it in the record.

[THE COURT]: You may go.

As stated previously, in the voir dire context, the objection was sufficiently timely to preserve error.

Originally, veniremember Schoepf was questioned by the trial court and Schoepf indicated that if the evidence supported an affirmative answer to the punishment special issues, she could answer them affirmative. Shortly thereafter, however, veniremember Schoepf stated "Well, I don't think I can morally myself vote to give someone the death sentence." When the trial court asked Schoepf about the inconsistency between the responses, Schoepf stated that "maybe" she should have answered "no" to the original special issue question.

The prosecutor then questioned veniremember Schoepf about whether Schoepf's opposition to the death penalty would interfere with Schoepf's ability to follow the law. Schoepf stated that she didn't want to violate her oath. She then stated, "I wouldn't be able to vote the man guilty if I knew it would result in the death penalty." To clarify the degree of veniremember Schoepf's inability to serve as a juror in a death penalty case, the prosecutor asked the following question:

Q. All right. So I want to make sure, I think your words are very clear and I want to make sure I understood them. I think you said that you would not be able to vote a man guilty of capital murder if you knew that he could possibly be sentenced to death as a result of your decision, is that correct?

[THE COURT]: Answer out please.

A. Yes.

\* \* \* \* \* \*

Q. Okay. Probablies § (sic) are what we call weasel words. We have to have your commitment yes or no, either you are going to or you are not. You are going to follow that oath even though it may result in death or you are going to follow your moral principles and make sure death can't be an object, what would you do?

A. I would follow my moral principles.

Q. And do your moral principles say you cannot allow for death even though some other persons may do it, you personally cannot?

A. That's right.

Thereafter, the defense questioned veniremember Schoepf regarding her moral convictions against her participation in the imposition of a sentence of death. Schoepf then stated that she wouldn't automatically vote no to the special issues, and that there was a one in a million chance that she could affirmatively answer the special issues, notwithstanding the fact that a sentence of death would automatically be imposed.

The prosecutor again questioned veniremember Schoepf. Schoepf acknowledged that she would hold the prosecution to a higher burden of proof in a case where the death penalty could possibly be imposed. The voir dire of Schoepf then concluded as follows:

A. I don't want to answer those questions. So I would say—

Q. Ma'am, wanting to doesn't count. you have to say you will or you won't. You just say I will in a proper case or I'm or I'm just not going to, you can't have what I want?

A. I'm not going to.

Q. You are not going to answer the questions, is that correct, ma'am?

A. Yes.

Q. And you recognize that includes that one in a million case in order to be true, does it include the one in a million case you are still not going to answer the question?

A. Right.

The defense did not seek to further examine veniremember Schoepf, but objected to the State's challenge for cause.

Veniremember Schoepf, though vacillating during the voir dire, completed her testimony by stating that her scruples against the death penalty would prevent her from answering the special issues. She was properly excludable for cause. See *Cordova*, 733 S.W.2d 175. The record need not establish a veniremember's bias with unmistakable clarity. As the Supreme Court stated in *Wainwright v. Witt*, 469 U.S. at 425–26, 105 S.Ct. at 852–53, "[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law ... this is why deference must be paid to the trial judge who sees and hears the juror." With this deference in mind, we conclude that the trial court did not abuse its discretion in granting the State's challenge for cause. Appellant's fourth point of error is overruled.

■ Next, appellant complains that the trial court erred in failing to grant a mistrial when the State introduced and subsequently withdrew an out of state pen packet during the punishment phase of trial. The gist of appellant's argument is that the pen packet was insufficient to demonstrate a prior final conviction, see Tex.Code Crim. Proc.Ann. art. 37.07 Sec. 3(a), because it did not contain a judgment and sentence.

The record reflects that during the punishment phase of trial, the court, over objection, admitted into evidence a Louisiana pen packet pertaining to appellant's prior convictions of "simple burglary" and forgery. The documents in the pen packet, however, did not contain a judgment and sentence. After admitting the exhibit, the court recessed for lunch. Immediately after lunch, the State requested that the court withdraw from evidence the pen packet because the law was "at least vague as to whether or not the exhibit in its current form would constitute any form of error." The court withdrew the exhibit from evidence and instructed the jury as follows:

Ladies and gentlemen of the jury, during the noon hour we had some discussion of the law in this case and the court is overruling the offer for admission of State's exhibit No. 72 which is the pen packet which was discussed just before lunch in the presence of the jury. You are instructed that you cannot consider this exhibit No. 72 for any purpose whatsoever. You are not to discuss any testimony which might have related to it or any statements made by the District Attorney relative to this exhibit. Do any of you have any questions about what I have just told you? Not for any purpose are you to discuss it in the jury room now or at any time hereafter during your deliberations so State's exhibit No. 72 is withdrawn and you are not to consider it for any purpose.

The State argues that error, if any, resulting from the erroneous admission of the pen packet was cured by the trial court's instruction to the jury to disregard. We agree. It is well-established that an instruction to disregard generally cures any error in the improper admission of evidence. An appropriate instruction may cure improper references to a defendant's extraneous offenses or other matters not in the record. *Warren v. State*, 514 S.W.2d 458, 463 (Tex.Cr.App.1974). This rule applies to the punishment phase of a capital murder prosecution. *Villarreal v. State*, 576 S.W.2d 51, 64 (Tex.Cr.App.1978). See

also *Gardner v. State,* 730 S.W.2d 675, 698 (Tex.Cr.App.1987) (court's instruction cured error resulting from prosecutor's remark during final argument that jury should believe a certain witness because the police did); *Yarbrough v. State,* 617 S.W.2d 221, 228 (Tex.Cr.App.1981) (any error resulting from State's improper question was removed by withdrawal of the question and the trial court's instruction to disregard); *Carter v. State,* 614 S.W.2d 821, 824–25 (Tex.Cr.App.1981) (any error in admitting improper testimony cured or rendered harmless by its withdrawal or instruction to disregard, except where the evidence is clearly calculated to inflame the minds of the jurors); *Wood v. State,* 440 S.W.2d 640, 642 (Tex.Cr.App.1969) (any error rendered harmless where prosecutor's argument regarding defendant's extraneous offense was withdrawn and court instructed jurors to disregard).

We hold that the court's withdrawal of the pen packet and the timely instruction to disregard cured error, if any, attendant to the improper admission of the pen packet. Accordingly, appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant argues that the punishment of death is cruel and unusual in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Art. 1, Sec. 13 of the Texas Constitution. Appellant raised a similar objection pretrial, but did not object on state law points. Appellant's objection at trial did not preserve this state law issue on appeal. *Crocker v. State,* 573 S.W.2d

190, 205 (Tex.Cr.App.1978). We therefore limit our analysis to the federal issue.

To support the assertion that a penalty of death is cruel and unusual punishment, appellant solely relies upon *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In *Furman,* the Supreme Court, through a brief per curiam opinion and five concurring opinions, held that the Georgia death penalty statute violated the Eighth Amendment prohibition against cruel and unusual punishment, as applied to the states through the Fourteenth Amendment, because the statute allowed the sentencers unguided discretion to impose the death penalty.[1]

In the wake of *Furman,* 408 U.S. 238, 92 S.Ct. 2726, the Texas Legislature enacted Tex.Code Crim.Proc.Ann. art. 37.071. To avoid the capriciousness disavowed in *Furman,* art. 37.071 guided the jury's discretion by narrowing the class of death eligible crimes and by requiring the jury to answer additional special issues regarding deliberateness, future dangerousness and provocation. In *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976), the Supreme Court scrutinized the validity of art. 37.071 and held that the revised death penalty statute overcame the constitutional deficiencies addressed in *Furman,* supra.[2] Appellant's sixth point of error is overruled.

■ Appellant's seventh point of error contends that the Texas death penalty statute violates the separation of powers doc-

1. The *Furman* decision actually involved three cases, including *Branch v. Texas,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In each case, black defendants were sentenced to death by juries applying capital sentencing statutes that allowed the sentencer unguided discretion to impose a sentence of death.

2. Since the *Jurek* decision, the Supreme Court has cited with approval the Texas death penalty scheme. See *Lowenfield v. Phelps,* 484 U.S. 231, 245, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988); *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). In *Penry v. Lynaugh,* — U.S. —, 109 S.Ct. 2934, 106 L.Ed.2d 256 (delivered June 21, 1989), however, the Supreme Court held that art. 37.071 failed to adequately guide the jury when presented with cer-

tain mitigating evidence, such as a defendant's abusive childhood and mental retardation. Specifically, the Court held that the statute's special issues, absent further definition and instruction, failed to allow the jury to "consider and give effect to the mitigating evidence" as required by *Lockett v. Ohio,* 438 U.S. 586, 608, 98 S.Ct. 2954, 2966, 57 L.Ed.2d 973 (1978) and *Eddings v. Oklahoma,* 455 U.S. 104, 109, 102 S.Ct. 869, 873, 71 L.Ed.2d 1 (1982). *Penry,* — U.S. at —, 109 S.Ct. at 2947. Appellant does not raise a *Penry* issue on appeal. Additionally, a review of the record reflects that appellant did not object at trial to the statutory sentencing scheme for failing to give effect to mitigating evidence, nor did he present mitigating evidence similar or analogous to that presented in *Penry,* supra.

trine by permitting the prosecution to determine which cases are to be charged as capital murder, thereby invading upon the power of the legislature. Essentially, appellant argues that the power to define crimes and the range of penalties lies exclusively with the legislature. Under Art. II, Sec. 1 of the Texas Constitution, no department of Texas government can exercise power granted specifically to another department. Therefore, appellant submits, when a prosecutor is allowed to decide whether to pursue a capital murder indictment, the executive branch is exercising power granted exclusively to the legislative branch.

To support this assertion, appellant relies upon *Rose v. State*, 752 S.W.2d 529 (Tex. Cr.App.1988) (op. on reh'g.) *Rose*, however, does not support appellant's assertion. In *Rose*, 752 S.W.2d at 552, we held Tex.Code Crim.Proc.Ann. art. 37.07 Sec. 4(a) unconstitutional because it violated the separation of powers and due course of law provisions of the Texas Constitution. Art. 37.07 Sec. 4(a) dealt with trial court parole instructions, not the capital murder statute nor the capital sentencing procedure statute. Thus, *Rose*, supra, addressed a situation wherein the legislative branch abrogated the executive branch's parole authority by creating the judicial parole law instruction. Such abrogation does not exist in the case at bar. A prosecutor's discretion to seek an indictment for capital murder, or any other offense, is not tantamount to the legislative authority to define the range of penalties for crimes. We adhere to the proposition that the imposition of the death penalty is not unconstitutional because the discretion given the prosecutor. See *Livingston v. State*, 542 S.W.2d 655, 662 (Tex. Cr.App.1976). Likewise, we hold that the prosecutor's discretion to seek a capital murder indictment does not violate the separation of powers doctrine. Appellant's seventh point of error is overruled.

■ Appellant's remaining points of error complain that the trial court erred in admitting three photographs of the deceased because they were repetitive and were offered only to inflame the minds of the jury. These exhibits were among a series of nine photographs taken of appellant at the scene of the murder. Eight of these photographs were offered and admitted into evidence. Appellant registered no objection to the other five pictures admitted at trial.

A photograph is competent evidence of any subject about which a witness's description is proper. *Brown v. State*, 696 S.W.2d 913, 914 (Tex.Cr.App.1985). In other words, if a verbal description of the item is admissible, then a photograph depicting the same is also admissible. *Burdine*, 719 S.W.2d at 316 (Tex.Cr.App.1986). Testimony, as well as photographs, concerning the scene of a murder are admissible to throw light on the murder and reveal its general nature. *Hawkins v. State*, 660 S.W.2d 65, 79–80 (Tex.Cr.App.1983).

The complained of exhibits depict the nude victim from behind. Appellant does not contend that the exhibits are particularly gruesome, but instead complains that there "appears to be fecal matter clinging to her." Appellant argues that demonstrating "what the body does after death" is so humiliating to the victim that it potentially inflames the minds of the jurors.

The Houston City mower operator who discovered the deceased testified at trial that the complained of exhibits fairly represented the scene on the date he found the body. Dr. Joseph Jachimczyck, Harris County Medical Examiner, testified at trial that he performed the autopsy on the victim. Dr. Jachimczyck explained that the three photographs are consistent with the theory that when the deceased was shot, she was on her hands and knees, and shot through her brain, from the right to the left, and that the deceased then fell in the position represented in the three photographs.

We hold that the trial court did not abuse its discretion in admitting the photographs. The position and condition of the victim's body when discovered are subjects about which witnesses could, and did, properly testify. Accordingly, the photographs depicting the body when discovered are also admissible. *Hawkins*, 660 S.W.2d at 79–80.

*Burdine,* 719 S.W.2d at 316. Appellant's points of error regarding the admissibility of the photographs are overruled.

Appellant's conviction is affirmed.

CLINTON, J., disagrees with, e.g., treatment of point 3 (venireman Jackson), and thus joins only the judgment of the Court.

TEAGUE, J., dissents because of the disposition of point of error # 3.

DUNCAN, J., concurs in the result.