TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00253-CR







Howard Olin Parks, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 9258, HONORABLE HAROLD TOWSLEE, JUDGE PRESIDING







 Appellant Howard Olin Parks was indicted for three counts of indecency with the
complainant, his ten year-old granddaughter.(1) The first count alleged he touched the
complainant's genitals, the second alleged he touched her breast, and the third alleged he exposed
his genitals to her. Parks pleaded guilty to the allegation that he touched the complainant's
genitals and the jury sentenced him to twenty years' confinement. We will affirm.

 Parks argues that because he testified that he did not remember touching the
complainant's genitals, the trial court should have withdrawn his guilty plea.(2)

 At the guilt/innocence stage of the trial, Parks said he did not remember touching
the complainant's genitals. The district court expressed concern that Parks had not admitted the
offense, and Parks' trial counsel said, "I think that's as close as he can possibly come to honestly
answer [sic] the question, Your Honor." The State offered to stipulate that a witness would testify
that Parks told him that "what his granddaughter said was true," and that in a videotaped session
with a therapist, the complainant alleged Parks had touched her genitals. Parks' counsel agreed
to the offered stipulation, saying, "He's trying to do the best he can, Judge, and he's saying
whatever the little girl says must be true and--that's all he can say." The State offered and the
court admitted into evidence Parks' written statement(3) given to the police and the videotape of the
complainant. The court then found the evidence sufficient, accepted Parks' guilty plea, and
brought the jury in to assess punishment. After the court accepted Park's guilty plea and two
witnesses had testified at the punishment stage, defense counsel moved to have Parks' guilty plea
withdrawn. The district court denied Parks' motion. 

 A defendant will not be allowed to plead guilty when evidence is introduced that
casts doubt on his actual guilt. Griffin v. State, 703 S.W.2d 193, 195 (Tex. Crim. App. 1986);
Lincoln v. State, 560 S.W.2d 657, 658 (Tex. Crim. App. 1978); Norwood v. State, 728 S.W.2d
59, 61 (Tex. App.--San Antonio 1987, pet. ref'd). The exculpating evidence must reasonably and
fairly raise the issue of the defendant's innocence of the charged offense; it is not enough for the
evidence merely to tend to show a defensive issue. Griffin, 703 S.W.2d at 196; Norwood, 728
S.W.2d at 61. If such evidence is introduced and is not withdrawn, thus raising a question as to
the defendant's innocence, the trial court must withdraw the guilty plea and sua sponte enter a not-guilty plea; the court may not evaluate the credibility of the evidence and choose to allow the
guilty plea to stand. Norwood, 728 S.W.2d at 61. In reviewing whether a trial court should have
withdrawn a guilty plea, we consider the totality of the circumstances of the case and the charged
offense. Griffin, 703 S.W.2d at 196; Norwood, 728 S.W.2d at 61. 

 At the guilt/innocence stage, Parks said he did not remember whether he touched
the complainant's genitals. He was asked whether he remembered telling a witness that the
complainant's allegations were true and he answered, "Well, my granddaughter, I don't think, lies. 
And that's--that's the only thing I've got to go by, ma'am." 

 At the punishment stage, a Smithville police officer read the following portions of
a transcript of Parks' oral statement to the police:


[Parks:] "It could be possible that I did--might have stuck my hand where 

it didn't belong." 

. . . .

[Officer:] "Uh-huh. But you're sure you did not stick your penis in her vagina."

[Parks:] "I'm sure honest about that."

[Officer:] "How are you so sure about that?"

[Parks:] "Well, it just ain't possible."

[Officer:] "Okay. Is it possible that you stuck your finger in her vagina?" 

[Parks:] "Well, it's possible, but I don't think I did."

[Officer:] "Okay."

[Parks:] "I don't think I stuck it in nothing but her pants."

[Officer:] "Okay. In her--in her vaginal--vaginal region, right?"

[Parks:] "Well, I could have, but you know, I don't remember"

. . . .

[Officer:] "While she caught you . . . while you was [sic], you know, like you
said, playing with yourself? Is there a possibility that you accidentally touched
her?"

[Parks:] "It's possible."

[Officer:] "Okay."

[Parks:] "It's possible."

[Officer:] "Okay."

[Parks:] "That is damn sure possible."

 At the punishment stage Parks testified, "I believe I honestly must have did it because
[the complainant] says I did." He did not believe the complainant would lie and therefore believed
he had touched her genitals even though he did not remember it. Parks was questioned as follows:


Question: But you admit that you touched her vagina, her--outside her clothing,
correct?

Answer: Correct.

Question: Do you have a [sic] actual memory of that?

Answer: Not really.

Question: At the time that this--but it happened. You agree that it happened?

Answer: I think it happened, yes, sir.


 Parks' testimony that he did not remember touching the complainant's genitals at most
tended to raise a defensive issue, such as whether he was too intoxicated to remember the events. 
Griffin, 703 S.W.2d at 196; Norwood, 728 S.W.2d at 61. Parks said it was possible that he had
touched her genitals and that he believed she told the truth in her allegations. He did not deny
touching her genitals, although he was clear in his denial of having sexual intercourse with her. 
Parks' testimony did not reasonably and fairly raise the issue of his innocence and the district court
did not err in failing to withdraw sua sponte his guilty plea. Griffin, 703 S.W.2d at 196;
Norwood, 728 S.W.2d at 61. We overrule Parks' first issue on appeal.

 In his second issue, Parks contends the district court erred in refusing to include in the
jury charge on punishment an instruction about sex offender registration. See Tex. Code Crim.
Proc. arts. 62.01-.12 (West Supp. 2000). 

 At the punishment stage, a witness testified about conditions for community supervision
imposed on people convicted of indecency with a child.(4) At the charge conference, Parks
requested that the jury be instructed that, if granted community supervision, he would be required
to register as a sex offender, "a highly punitive thing for a person to do." The district court denied
the request, but stated Parks could refer to the registration requirements in his closing arguments. 
The charge explained how the jury could recommend community supervision and stated that "[t]he
terms and conditions of community supervision may include, but shall not be limited to" a list of
some of the basic conditions for community supervision set out in the Code of Criminal Procedure. 
(Emphasis added.) See Tex. Code Crim. Proc. art. 42.12 § 11(a) (West Supp. 2000). 

 Parks points to Ellis v. State, 723 S.W.2d 671 (Tex. Crim. App. 1986), to support his
argument. In Ellis, the jury charge stated that conditions of community supervision were "limited
to" an incomplete list of statutory conditions. Id. at 672. That error was compounded by incorrect
testimony that the trial judge could not impose additional conditions; an incorrect statement that
several of the listed conditions had been held too vague to be enforceable; and the fact that the
prosecutor and the defense attorney both referred to the incomplete list in the charge as the only
possible conditions that could be imposed. Id. at 672-73.

 While Ellis has not been explicitly overruled, in Yarbrough v. State, 779 S.W.2d 844
(Tex. Crim. App. 1989), the court dismissed the petition for discretionary review as improvidently
granted and approved of the lower court's opinion holding it was not reversible error to refuse to
include in a jury charge all the statutory conditions of community supervision. 779 S.W.2d at
845; see Yarbrough v. State, 742 S.W.2d 62, 64-65 (Tex. App.--Dallas 1987, pet. dism'd); see
also Flores v. State, 513 S.W.2d 66, 69 (Tex. Crim. App. 1974) ("While it is considered good
practice to enumerate in the court's charge the probationary conditions which the court may
impose if [community supervision] is recommended by the jury, the failure to so enumerate the
said conditions is not harmful . . . ."). One court of appeals has noted that "if Ellis ever stood for
the proposition that a trial judge was required to include all of the statutory terms of [community
supervision] in the charge, it has since been overruled sub silentio." Murdock v. State, 840
S.W.2d 558, 570 (Tex. App.--Texarkana 1992), vacated for reconsideration on other grounds,
845 S.W.2d 915 (Tex. Crim. App. 1993), adopted and incorporated on reconsideration, 856
S.W.2d 262, 264 (Tex. App.--Texarkana 1993, pet. ref'd). Several other courts of appeals have
held it is not error to fail to include in a jury charge a complete listing of every statutory condition
of community supervision. Means v. State, 955 S.W.2d 686, 692 (Tex. App.--Amarillo 1997,
pet. ref'd untimely filed); Cortez v. State, 955 S.W.2d 382, 384 (Tex. App.--San Antonio 1997,
no pet.); McNamara v. State, 900 S.W.2d 466, 468 (Tex. App.--Fort Worth 1995, no pet.).

 The charge in this case did not state that the district court was limited in the conditions
it could impose on Parks and the jury heard testimony about additional statutory conditions
imposed on sex offenders granted community supervision. A trial court need not enumerate in a
jury charge each and every possible condition of community supervision that could be imposed
on a defendant. Flores, 513 S.W.2d at 69; Means, 955 S.W.2d at 692; Cortez, 955 S.W.2d at
384; McNamara, 900 S.W.2d at 468; Murdock, 840 S.W.2d at 570; Yarbrough, 742 S.W.2d at
64-65. The district court did not err in refusing to include in the charge sex offender registration
requirements. We overrule Parks' second issue on appeal.

 Finally, Parks argues that the district court erred in admitting into evidence his
audiotaped statement.(5) Parks does not contend that his statement was involuntary, nor does he
argue that he did not understand his rights. Instead, he argues that the State did not meet its
burden of showing that he voluntarily waived his rights. Parks essentially seems to argue that
because the audiotape does not include an explicit waiver of his rights, the statement should be
held inadmissable under section 3, article 38.22 of the Code of Criminal Procedure. 

 Smithville Police Officer Bobby Vernengo testified that when he arrested Parks, he read
him his statutory rights, including the right to remain silent and the right to an attorney. When
asked if Parks indicated that he understood those rights, Vernengo answered, "Yes." Vernengo
said he used an audiotape recorder to record the beginning of his interview with Parks. Once they
reached the police station, Vernengo videotaped the rest of the interview. As the State prepared
to play the audiotape for the jury, Parks' trial counsel objected, saying, "I think we've got a
possible question in terms of a statutory warning." Trial counsel pointed out that on the tape
Vernengo read Parks his statutory rights and asked if Parks understood those rights but that Parks
did not verbally acknowledge whether he understood his rights. Vernengo proceeded to question
Parks for a period of time before beginning the videotaped interview. Trial counsel asked
Vernengo whether Parks acknowledged that he understood his rights during the audiotaping. 
Vernengo said, "Verbally he did not, and I don't remember any gestures that he made, whether
it be a head shake, yes or no." Trial counsel asked, "So as far as you're concerned, he did not
make any admissions--I mean, that he understand [sic] you?" Vernengo answered, "As far as I
can remember, that's correct." The State asked if Parks indicated that he did not understand his
rights, and Vernengo answered, "He gave me no indication that he didn't. I remember him saying
that he had some crackers in this [sic] mouth, and he was trying to swallow them. . . . But as far
as verbal statements, I don't recall that he made any that he understood them." The district court
overruled Parks' objection and allowed the audiotape to be played for the jury.

 In order for an oral statement to be admissible, it must be electronically recorded and,
before the statement but during the recording, the defendant must be given his statutory warnings
and must knowingly, intelligently, and voluntarily waive those rights. Tex. Code Crim. Proc. art.
38.22, §§ 2, 3 (West 1979 & Supp. 2000). It is not necessary that the recorded statement contain
an express verbal statement by the defendant waiving those rights. Rocha v. State, 16 S.W.3d 1,
12 (Tex. Crim. App. 2000); Etheridge v. State, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994);
Barefield v. State, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989); Gomes v. State, 9 S.W.3d 373,
380 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd). We look at the totality of the
circumstances in considering the admissibility of a statement. Barefield, 784 S.W.2d at 41;
Gomes, 9 S.W.3d at 377.

 Parks did not testify that he did not understand his rights or that he spoke to Vernengo
involuntarily. When Parks arrived at the police station and Vernengo began videotaping the
interview, Vernengo again explained Parks' rights and Parks indicated he understood his rights
and wished to answer Vernengo's questions. The form on which Vernengo wrote Parks' statement
included the statutory warnings and before Vernengo wrote Parks' statement with him, he again
read Parks his rights and Parks indicated he understood them. 

 The statement is not inadmissible simply because it does not contain a verbal waiver
of Parks' rights. Rocha, 16 S.W.3d at 12; Etheridge, 903 S.W.2d at 16. Considering the totality
of the circumstances, we defer to the district court's resolution of Parks' objection. Rocha, 16
S.W.3d at 12; Barefield, 784 S.W.2d at 41. We overrule his third issue on appeal.

 Having overruled all of Parks' issues on appeal, we affirm the district court's judgment.



 Mack Kidd, Justice

Before Justices Jones, Kidd, and Yeakel

Affirmed

Filed: December 21, 2000

Do Not Publish

1. A person commits indecency with a child if he has sexual contact with or, with an intent to
satisfy sexual desires, exposes his genitals to a child. Tex. Penal Code § 21.11(a) (West Supp.
2000). Sexual contact is "any touching of the anus, breast, or any part of the genitals" with the
"intent to arouse or gratify the sexual desire of any person." Id. § 21.01(2) (West 1994). 
2. The State contends that Parks has not preserved error on this issue because the objection
made to the district court "has little if any relationship to the ground of error presented on appeal." 
Parks' trial counsel made, "for lack of a better term . . . a dilemma motion," and moved to have
Parks' guilty plea withdrawn or, in the alternative, for a mistrial so Parks could be tried at a later
date on a not-guilty plea. Counsel contended the plea should be withdrawn because a witness did
not testify that Parks admitted touching the complainant's genitals and, therefore, "the State had
failed to put the evidence on . . . that they told the Court they would to sustain the guilty plea." 
The State responded that it had not promised testimony that Parks had actually admitted touching
the complainant's genitals and that the videotape of the complainant and Parks' written statement
were sufficient to support the guilty plea. The district court ruled, "Well, I'm satisfied with the
evidence that supports the plea of guilty at this point. I'll deny or overrule the motion for you so
you've got a ruling on the record." The district court clearly understood Parks' objection to be
attacking the sufficiency of the evidence supporting the guilty plea. We will examine Parks' issue
on appeal.
3. In his statement, Parks said that on the day of the offense he and the complainant were alone
at his house. He admitted to kissing her, rubbing her buttocks on top of her clothing, and touching
one of her breasts. He also said, "I believe my granddaughter and I believe she is telling the
truth."
4. Someone so convicted must register as a sex offender with local law enforcement authorities
and must have his or her name, address, and description of the offense published in the local
newspaper. See Tex. Code Crim. Proc. arts. 62.02, .03 (West Supp. 2000).
5. On the first day of testimony, the State moved to admit the audiotaped statement and Parks'
trial counsel stated he had no objection to its admission. On the second day, as the State prepared
to play the audiotape for the jury for the first time, counsel objected that there was a problem with
the statutory warnings. While it can be argued that Parks waived his objection by not objecting
at the time the audiotape was admitted, Taylor v. State, 489 S.W.2d 890, 892 (Tex. Crim. App.
1973); Mowbray v. State, 788 S.W.2d 658, 663 (Tex. App.--Corpus Christi 1990, pet. ref'd), he
objected before the audiotape was published to the jury and we will consider his contention.


 those rights. Rocha v. State, 16 S.W.3d 1,
12 (Tex. Crim. App. 2000); Etheridge v. State, 903 S.W.2d 1, 1