# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00253-CR

**Howard Olin Parks, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 9258, HONORABLE HAROLD TOWSLEE, JUDGE PRESIDING

Appellant Howard Olin Parks was indicted for three counts of indecency with the complainant, his ten year-old granddaughter.[1] The first count alleged he touched the complainant's genitals, the second alleged he touched her breast, and the third alleged he exposed his genitals to her. Parks pleaded guilty to the allegation that he touched the complainant's genitals and the jury sentenced him to twenty years' confinement. We will affirm.

Parks argues that because he testified that he did not remember touching the complainant's genitals, the trial court should have withdrawn his guilty plea.[2]

---

[1] A person commits indecency with a child if he has sexual contact with or, with an intent to satisfy sexual desires, exposes his genitals to a child. Tex. Penal Code § 21.11(a) (West Supp. 2000). Sexual contact is "any touching of the anus, breast, or any part of the genitals" with the "intent to arouse or gratify the sexual desire of any person." *Id.* § 21.01(2) (West 1994).

[2] The State contends that Parks has not preserved error on this issue because the objection made to the district court "has little if any relationship to the ground of error presented on

At the guilt/innocence stage of the trial, Parks said he did not remember touching the complainant's genitals. The district court expressed concern that Parks had not admitted the offense, and Parks' trial counsel said, "I think that's as close as he can possibly come to honestly answer [sic] the question, Your Honor." The State offered to stipulate that a witness would testify that Parks told him that "what his granddaughter said was true," and that in a videotaped session with a therapist, the complainant alleged Parks had touched her genitals. Parks' counsel agreed to the offered stipulation, saying, "He's trying to do the best he can, Judge, and he's saying whatever the little girl says must be true and that's all he can say." The State offered and the court admitted into evidence Parks' written statement[3] given to the police and the videotape of the complainant. The court then found the evidence sufficient, accepted Parks' guilty plea, and brought the jury in to assess punishment. After the court accepted Park's guilty plea and two

---

appeal." Parks' trial counsel made, "for lack of a better term . . . a dilemma motion," and moved to have Parks' guilty plea withdrawn or, in the alternative, for a mistrial so Parks could be tried at a later date on a not-guilty plea. Counsel contended the plea should be withdrawn because a witness did not testify that Parks admitted touching the complainant's genitals and, therefore, "the State had failed to put the evidence on . . . that they told the Court they would to sustain the guilty plea." The State responded that it had not promised testimony that Parks had actually admitted touching the complainant's genitals and that the videotape of the complainant and Parks' written statement were sufficient to support the guilty plea. The district court ruled, "Well, I'm satisfied with the evidence that supports the plea of guilty at this point. I'll deny or overrule the motion for you so you've got a ruling on the record." The district court clearly understood Parks' objection to be attacking the sufficiency of the evidence supporting the guilty plea. We will examine Parks' issue on appeal.

[3] In his statement, Parks said that on the day of the offense he and the complainant were alone at his house. He admitted to kissing her, rubbing her buttocks on top of her clothing, and touching one of her breasts. He also said, "I believe my granddaughter and I believe she is telling the truth."

2

witnesses had testified at the punishment stage, defense counsel moved to have Parks' guilty plea withdrawn. The district court denied Parks' motion.

A defendant will not be allowed to plead guilty when evidence is introduced that casts doubt on his actual guilt. *Griffin v. State*, 703 S.W.2d 193, 195 (Tex. Crim. App. 1986); *Lincoln v. State*, 560 S.W.2d 657, 658 (Tex. Crim. App. 1978); *Norwood v. State*, 728 S.W.2d 59, 61 (Tex. App. San Antonio 1987, pet. ref'd). The exculpating evidence must reasonably and fairly raise the issue of the defendant's innocence of the charged offense; it is not enough for the evidence merely to tend to show a defensive issue. *Griffin*, 703 S.W.2d at 196; *Norwood*, 728 S.W.2d at 61. If such evidence is introduced and is not withdrawn, thus raising a question as to the defendant's innocence, the trial court must withdraw the guilty plea and *sua sponte* enter a not-guilty plea; the court may not evaluate the credibility of the evidence and choose to allow the guilty plea to stand. *Norwood*, 728 S.W.2d at 61. In reviewing whether a trial court should have withdrawn a guilty plea, we consider the totality of the circumstances of the case and the charged offense. *Griffin*, 703 S.W.2d at 196; *Norwood*, 728 S.W.2d at 61.

At the guilt/innocence stage, Parks said *he did not remember* whether he touched the complainant's genitals. He was asked whether he remembered telling a witness that the complainant's allegations were true and he answered, "Well, my granddaughter, I don't think, lies. And that's that's the only thing I've got to go by, ma'am."

At the punishment stage, a Smithville police officer read the following portions of a transcript of Parks' oral statement to the police:

3

[Parks:] "It could be possible that I did might have stuck my hand where it didn't belong."

. . . .

[Officer:] "Uh-huh. But you're sure you did not stick your penis in her vagina."

[Parks:] "I'm sure honest about that."

[Officer:] "How are you so sure about that?"

[Parks:] "Well, it just ain't possible."

[Officer:] "Okay. Is it possible that you stuck your finger in her vagina?"

[Parks:] "Well, it's possible, but I don't think I did."

[Officer:] "Okay."

[Parks:] "I don't think I stuck it in nothing but her pants."

[Officer:] "Okay. In her in her vaginal vaginal region, right?"

[Parks:] "Well, I could have, but you know, I don't remember"

. . . .

[Officer:] "While she caught you . . . while you was [sic], you know, like you said, playing with yourself? Is there a possibility that you accidentally touched her?"

[Parks:] "It's possible."

[Officer:] "Okay."

[Parks:] "It's possible."

[Officer:] "Okay."

[Parks:] "That is damn sure possible."

4

At the punishment stage Parks testified, "I believe I honestly must have did it because [the complainant] says I did."  He did not believe the complainant would lie and therefore believed he had touched her genitals even though he did not remember it.  Parks was questioned as follows:

Question:  But you admit that you touched her vagina, her outside her clothing, correct?

Answer:  Correct.

Question:  Do you have a [sic] actual memory of that?

Answer:  Not really.

Question:  At the time that this but it happened.  You agree that it happened?

Answer:  I think it happened, yes, sir.

Parks' testimony that he did not remember touching the complainant's genitals at most tended to raise a defensive issue, such as whether he was too intoxicated to remember the events. *Griffin*, 703 S.W.2d at 196; *Norwood*, 728 S.W.2d at 61.  Parks said it was *possible* that he had touched her genitals and that he believed she told the truth in her allegations.  He did not deny touching her genitals, although he was clear in his denial of having sexual intercourse with her. Parks' testimony did not reasonably and fairly raise the issue of his innocence and the district court did not err in failing to withdraw *sua sponte* his guilty plea.  *Griffin*, 703 S.W.2d at 196; *Norwood*, 728 S.W.2d at 61.  We overrule Parks' first issue on appeal.

In his second issue, Parks contends the district court erred in refusing to include in the jury charge on punishment an instruction about sex offender registration. *See* Tex. Code Crim. Proc. arts. 62.01-.12 (West Supp. 2000).

At the punishment stage, a witness testified about conditions for community supervision imposed on people convicted of indecency with a child.[4] At the charge conference, Parks requested that the jury be instructed that, if granted community supervision, he would be required to register as a sex offender, "a highly punitive thing for a person to do." The district court denied the request, but stated Parks could refer to the registration requirements in his closing arguments. The charge explained how the jury could recommend community supervision and stated that "[t]he terms and conditions of community supervision may include, but *shall not be limited to*" a list of some of the basic conditions for community supervision set out in the Code of Criminal Procedure. (Emphasis added.) *See* Tex. Code Crim. Proc. art. 42.12 § 11(a) (West Supp. 2000).

Parks points to *Ellis v. State*, 723 S.W.2d 671 (Tex. Crim. App. 1986), to support his argument. In *Ellis*, the jury charge stated that conditions of community supervision were "limited to" an incomplete list of statutory conditions. *Id.* at 672. That error was compounded by incorrect testimony that the trial judge could not impose additional conditions; an incorrect statement that several of the listed conditions had been held too vague to be enforceable; and the

---

[4] Someone so convicted must register as a sex offender with local law enforcement authorities and must have his or her name, address, and description of the offense published in the local newspaper. *See* Tex. Code Crim. Proc. arts. 62.02, .03 (West Supp. 2000).

fact that the prosecutor and the defense attorney both referred to the incomplete list in the charge as the only possible conditions that could be imposed. *Id*. at 672-73.

While *Ellis* has not been explicitly overruled, in *Yarbrough v. State*, 779 S.W.2d 844 (Tex. Crim. App. 1989), the court dismissed the petition for discretionary review as improvidently granted and approved of the lower court's opinion holding it was not reversible error to refuse to include in a jury charge all the statutory conditions of community supervision. 779 S.W.2d at 845; *see Yarbrough v. State*, 742 S.W.2d 62, 64-65 (Tex. App.—Dallas 1987, pet. dism'd); *see also Flores v. State*, 513 S.W.2d 66, 69 (Tex. Crim. App. 1974) ("While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if [community supervision] is recommended by the jury, the failure to so enumerate the said conditions is not harmful . . . ."). One court of appeals has noted that "if *Ellis* ever stood for the proposition that a trial judge was required to include all of the statutory terms of [community supervision] in the charge, it has since been overruled *sub silentio*." *Murdock v. State*, 840 S.W.2d 558, 570 (Tex. App.—Texarkana 1992), *vacated for reconsideration on other grounds*, 845 S.W.2d 915 (Tex. Crim. App. 1993), *adopted and incorporated on reconsideration*, 856 S.W.2d 262, 264 (Tex. App.—Texarkana 1993, pet. ref'd). Several other courts of appeals have held it is not error to fail to include in a jury charge a complete listing of every statutory condition of community supervision. *Means v. State*, 955 S.W.2d 686, 692 (Tex. App.—Amarillo 1997, pet. ref'd untimely filed); *Cortez v. State*, 955 S.W.2d 382, 384 (Tex. App.—San Antonio 1997, no pet.); *McNamara v. State*, 900 S.W.2d 466, 468 (Tex. App.—Fort Worth 1995, no pet.).

The charge in this case did not state that the district court was limited in the conditions it could impose on Parks and the jury heard testimony about additional statutory conditions imposed on sex offenders granted community supervision. A trial court need not enumerate in a jury charge each and every possible condition of community supervision that could be imposed on a defendant. *Flores*, 513 S.W.2d at 69; *Means*, 955 S.W.2d at 692; *Cortez*, 955 S.W.2d at 384; *McNamara*, 900 S.W.2d at 468; *Murdock*, 840 S.W.2d at 570; *Yarbrough*, 742 S.W.2d at 64-65. The district court did not err in refusing to include in the charge sex offender registration requirements. We overrule Parks' second issue on appeal.

Finally, Parks argues that the district court erred in admitting into evidence his audiotaped statement.[5] Parks does not contend that his statement was involuntary, nor does he argue that he did not understand his rights. Instead, he argues that the State did not meet its burden of showing that he voluntarily waived his rights. Parks essentially seems to argue that because the audiotape does not include an explicit waiver of his rights, the statement should be held inadmissable under section 3, article 38.22 of the Code of Criminal Procedure.

Smithville Police Officer Bobby Vernengo testified that when he arrested Parks, he read him his statutory rights, including the right to remain silent and the right to an attorney. When asked if Parks indicated that he understood those rights, Vernengo answered, "Yes."

---

[5] On the first day of testimony, the State moved to admit the audiotaped statement and Parks' trial counsel stated he had no objection to its admission. On the second day, as the State prepared to play the audiotape for the jury for the first time, counsel objected that there was a problem with the statutory warnings. While it can be argued that Parks waived his objection by not objecting at the time the audiotape was admitted, *Taylor v. State*, 489 S.W.2d 890, 892 (Tex. Crim. App. 1973); *Mowbray v. State*, 788 S.W.2d 658, 663 (Tex. App.—Corpus Christi 1990, pet. ref'd), he objected before the audiotape was published to the jury and we will consider his contention.

8

Vernengo said he used an audiotape recorder to record the beginning of his interview with Parks. Once they reached the police station, Vernengo videotaped the rest of the interview. As the State prepared to play the audiotape for the jury, Parks' trial counsel objected, saying, "I think we've got a possible question in terms of a statutory warning." Trial counsel pointed out that on the tape Vernengo read Parks his statutory rights and asked if Parks understood those rights but that Parks did not verbally acknowledge whether he understood his rights. Vernengo proceeded to question Parks for a period of time before beginning the videotaped interview. Trial counsel asked Vernengo whether Parks acknowledged that he understood his rights during the audiotaping. Vernengo said, "Verbally he did not, and I don't remember any gestures that he made, whether it be a head shake, yes or no." Trial counsel asked, "So as far as you're concerned, he did not make any admissions I mean, that he understand [sic] you?" Vernengo answered, "As far as I can remember, that's correct." The State asked if Parks indicated that he did not understand his rights, and Vernengo answered, "He gave me no indication that he didn't. I remember him saying that he had some crackers in this [sic] mouth, and he was trying to swallow them. . . . But as far as verbal statements, I don't recall that he made any that he understood them." The district court overruled Parks' objection and allowed the audiotape to be played for the jury.

In order for an oral statement to be admissible, it must be electronically recorded and, before the statement but during the recording, the defendant must be given his statutory warnings and must knowingly, intelligently, and voluntarily waive those rights. Tex. Code Crim. Proc. art. 38.22, §§ 2, 3 (West 1979 & Supp. 2000). It is not necessary that the recorded statement contain an express verbal statement by the defendant waiving those rights. *Rocha v. State*, 16

9

S.W.3d 1, 12 (Tex. Crim. App. 2000); *Etheridge v. State*, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994); *Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989); *Gomes v. State*, 9 S.W.3d 373, 380 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd). We look at the totality of the circumstances in considering the admissibility of a statement. *Barefield*, 784 S.W.2d at 41; *Gomes*, 9 S.W.3d at 377.

Parks did not testify that he did not understand his rights or that he spoke to Vernengo involuntarily. When Parks arrived at the police station and Vernengo began videotaping the interview, Vernengo again explained Parks' rights and Parks indicated he understood his rights and wished to answer Vernengo's questions. The form on which Vernengo wrote Parks' statement included the statutory warnings and before Vernengo wrote Parks' statement with him, he again read Parks his rights and Parks indicated he understood them.

The statement is not inadmissible simply because it does not contain a verbal waiver of Parks' rights. *Rocha*, 16 S.W.3d at 12; *Etheridge*, 903 S.W.2d at 16. Considering the totality of the circumstances, we defer to the district court's resolution of Parks' objection. *Rocha*, 16 S.W.3d at 12; *Barefield*, 784 S.W.2d at 41. We overrule his third issue on appeal.

Having overruled all of Parks' issues on appeal, we affirm the district court's judgment.

Mack Kidd, Justice

10

Before Justices Jones, Kidd, and Yeakel

Affirmed

Filed:   December 21,  2000

Do Not Publish

11