NUMBER 13-08-114-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

SAMUEL RODRIGUEZ REYNA,                                        
     Appellant,

 

v.

 

THE STATE OF TEXAS,               
                                  Appellee.

                                                                                                                     
  

 

On appeal from the
319th District Court 

of Nueces County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices
Benavides, Vela, and Perkes  

Memorandum Opinion by
Justice Vela

                                                                                                                                    

            A jury found appellant, Samuel Rodriguez
Reyna, guilty of murder.  See Tex.
Penal Code Ann. § 19.02(b) (West 2003).  After finding he had a previous
felony conviction, the jury assessed punishment at ninety-nine years’
imprisonment.  In eleven issues, Reyna argues:  (1) the evidence is
insufficient to support his conviction; (2) various witnesses committed
aggravated perjury; (3) the testimony of several witnesses was inadmissible;
(4) the State’s improper investigation denied him due process and a fair trial;
and (5) the trial court abused its discretion in denying his pretrial
application for writ of habeas corpus and his motion to suppress his
video-taped statement.  We affirm.

I. Factual Background

            On July 25, 2006, Kimberly Powell, Samuel
Reyna, and Ricardo Reyes were drinking beer in a vacant lot on Corpus Christi’s
Leopard Street.  Paul Licoscos and his girlfriend, Debra Oscar, were also
drinking beer in the lot.  Powell testified that because Oscar was intoxicated,
Reyna told Licoscos, “‘You need to take care of her[.]’”  At that point, Reyna
and Licoscos started fighting, and after Powell broke it up, the two shook
hands.  Afterwards, Powell left to buy more beer.  Upon returning, she saw
Reyna and Licoscos staring at each other.  She walked away from them, and when
she turned around, she “saw Sammy [Reyna] start stabbing him [Licoscos] in the
back.”  Unable to pull Reyna away from Licoscos, Powell ran behind a nearby
Shell station and waited for Reyna to leave the area.  After he left, she
checked on Licoscos and then called 9-1-1.  

Powell testified that because she was
afraid of Reyna, she told the police that the suspect was a “black man.” 
Later, the police showed her a photo line-up, and she identified Reyna as the
person who stabbed Licoscos.

On cross-examination, Powell testified
that “[t]here was no lighting” at the crime scene and that she had been
drinking the night of the murder.  She stated that when she called 9-1-1, she
identified the suspect as “[a] black man with a blue shirt and brown
‘buckles.’”  When asked about the weapon, which the killer used to stab
Licoscos, she testified that even though she could not identify the weapon, she
“could . . . see the weapon.”

Michelle Robertson arrived at the vacant
lot shortly before the stabbing.  At some point, she saw Reyna with a knife. 
When the prosecutor asked her, “[D]id the defendant [Reyna] say anything to you
after you saw the knife about what he was going to do to Paul [Licoscos]?”, she
replied, “He said he was gonna kill the motherf—.”  Then, she saw Reyna stab
Licoscos about six or seven times with the knife. 

Officer Macedonio Rodriguez, the first
officer to arrive at the scene, found Licoscos’s body in the vacant lot.  He
testified that Powell, who did not appear to be intoxicated, described the
suspect as “a black male, 38 to 40 years of age, about five foot eight; . . .
wearing shorts, a jersey, Addida [sic] shoes; and that . . . he used a pair of
scissors in the assault.”  

Officer Crispin Mendez arrived at the
scene shortly after Officer Rodriguez.  He testified that Powell, who was
afraid to talk to him, said that a “black male went after the victim with some
scissors and began to stab him.”  She also told him the suspect chased her and
that she ran across the street because she was afraid of him.

Detective R.L. Garcia, who investigated
the murder, testified that Powell gave “varying statements about the identity”
of the suspect.  When he spoke to her again, she said the suspect’s name was
“Samuel Rodriguez” and that she initially lied about the suspect’s identity
because she “was a street person that was scared of the suspect.”  When
Detective Garcia showed her the photo line-up, she identified suspect number
five, who is “Samuel Rodriguez Reyna.”

 

Detective T.K. Revis testified that
after the murder, Powell gave him a statement in which she lied about the
suspect’s age, clothing, and race.  Later, however, she told him she had lied
about the suspect’s description because “she was scared of retaliation from Mr.
Reyna.”  She gave Detective Revis another statement in which she identified
Samuel Reyna as the murderer.  Detective Revis also testified that Powell
identified Reyna from a photo line-up.  He had no information that either Debra
Oscar or Ricardo Reyes were involved in the murder.

In the morning following the murder,
Officer Kevin Felt was on patrol and saw Reyna standing on a sidewalk near
Omaha Street.  Officer Felt pulled up next to him and asked him his name. 
Reyna identified himself, walked up to Officer Felt’s squad car, and said, “‘I’m
Samuel Reyna.  I hear you’re looking for me.’”  He asked Reyna if he had any
weapons and then tried to pat him down.  At that point, Reyna reached into his
right front pocket, and Officer Felt “grabbed [Reyna’s] hand, and removed with
his hand a knife” from Reyna’s pocket.  Officer Felt described the knife as a
“[b]lack folding knife, probably around three inches long.”  He put Reyna in
the back seat of his squad car and notified Detective Garcia, who came to the
scene and identified himself to Reyna.  Detective Garcia testified that Reyna
asked him, “‘Do you want to talk to me about the fight or the stabbing?’” 
Reyna agreed to go to the police station and talk to him about the incident.

While at the police station, Detectives
Garcia and Revis interviewed Reyna.  The interview was recorded[1]
and played to the jury during the guilt-innocence phase.  The videotape showed
that Reyna told the detectives he had nothing to say about what happened
between him and Licoscos.  Afterwards, they stopped the interrogation and
arrested Reyna pursuant to an arrest warrant.

Cynthia Morales, a forensic scientist
with the Texas Department of Public Safety crime lab, tested a blood sample
removed from the blade of the knife that Officer Felt took from Reyna’s pocket. 
Morales testified the DNA profile from this blood sample was consistent with
Licoscos’s DNA profile.  She said the DNA profile found on Reyna’s belt was
consistent with Licoscos’s DNA profile.  On Reyna’s shoes, she found a mixture
of blood consistent with the DNA profiles of Reyna and Licoscos.  She said that
on one of Reyna’s socks, “the DNA profile was consistent with a mixture from
Samuel Reyna and Paul Licoscos.”

Dr. Rey Fernandez, the pathologist who
performed Licoscos’s autopsy, testified that Licoscos had four stab wounds on
the front chest area and four stab wounds “at the back.”  He stated, “These
would be the type that I would expect from a sharp-edged weapon like a knife.” 
He said the fatal-type wounds punctured Licoscos’s lungs and liver.  He
testified that the cause of death was “multiple stab wounds.”

The defense did not call any witnesses
to testify at the guilt-innocence phase.    

II. Discussion

A. Evidentiary Sufficiency

In issue one, Reyna contends that the
evidence is factually insufficient to support his conviction.  The court of
criminal appeals has held that there is no meaningful distinction between the
legal sufficiency standard and the factual sufficiency standard.  Brooks v.
State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.)
(overruling Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996)); id.
at 926 (Cochran, J., concurring).  Thus, the Jackson v. Virginia
sufficiency standard is the “only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Id. at 895; see Jackson v. Virginia, 443 U.S. 307, 319
(1979).  Therefore, we will review Reyna’s sufficiency challenge by applying
the standard of review set out in Jackson.  See Pomier v.
State, 326 S.W.3d 374, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.)
(applying a single standard of review required by Brooks).

1. Standard of Review

“When reviewing a case for legal
sufficiency, we view all of the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.”  Winfrey v.
State, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)).  Accordingly, “we ‘determine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.’”  Id. at 879 (quoting Clayton v. State, 235 S.W.3d 772,
778 (Tex. Crim. App. 2007) (citing Hooper v. State, 214 S.W.3d 9, 16–17
(Tex. Crim. App. 2007)).  “It has been said quite appropriately, that ‘[t]he
appellate scales are supposed to be weighted in favor of upholding a trial
court’s judgment of conviction, and this weighting includes, for example, the
highly deferential standard of review for legal-sufficiency claims.’”  Id.
(quoting Haynes v. State, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008)
(Keller J., dissenting) (citing Jackson, 443 U.S. at 319)).  “We must
therefore determine whether the evidence presented to the jury, viewed in the
light most favorable to the verdict, proves beyond a reasonable doubt that
appellant” committed the crime for which the jury found him guilty.  See id. 
“It is the obligation and responsibility of appellate courts ‘to ensure that
the evidence presented actually supports a conclusion that the defendant
committed the crime that was charged.’”  Id. at 882 (quoting Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).  In addition, “‘[i]f
the evidence at trial raises only a suspicion of guilt, even a strong one, then
that evidence is insufficient [to convict].’”  Id. (quoting Urbano v.
State, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992)), superseded in part
on other grounds, Herrin v. State, 125 S.W.3d 436, 443 (Tex. Crim.
App. 2002).

2. Applicable Law and Analysis

A person commits the offense of murder
if he intentionally or knowingly causes the death of another.  Tex. Penal Code Ann. § 19.02(b)(1).  In
this case, the medical evidence showed Licoscos died from multiple stab
wounds.  These wounds were the type produced by a sharp-edged weapon like a
knife.  Both Powell and Robertson saw Reyna stab Licoscos several times, and
Robertson saw that Reyna used a knife to stab him.  In the morning following
Licoscos’s murder, a knife was taken from Reyna’s pocket.  Its blade tested
positive for blood, and the DNA profile from this blood was consistent with
Licoscos’s DNA profile.

            Even though Powell initially lied to the
9-1-1 operator and to the police about the suspect’s identity, an appellate
court must be “deferential to the jury’s determination of witness credibility.
. . .”  Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). 
“What weight to give contradictory testimonial evidence is within the sole
province of the jury, because it turns on an evaluation of credibility and
demeanor.”  Id. at 408–09.  The jury could have reasonably chosen to
disbelieve Powell’s statements to the police that the suspect was a black man
who used scissors to stab the victim and to believe her testimony at trial that
she had seen Reyna stab Licoscos.  See id.  In addition, the evidence
showed that Reyna left the crime scene after stabbing Licoscos.  “Evidence of
flight is admissible as a circumstance from which an inference of guilt may be
drawn.”  Burks v. State, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). 
Thus, the jury could reasonably have considered Reyna’s flight as incriminating
circumstantial evidence.

            Viewing all of the evidence in the light most
favorable to the verdict, we hold that the evidence is legally sufficient to
support the jury’s finding that Reyna intentionally or knowingly caused the
death of Paul Licoscos.  Accordingly, we overrule the first issue.

B. Alleged Perjured Testimony

In issues two through five, Reyna
contends Kimberly Powell, Michelle Robertson, Detective Revis, and Detective
Garcia committed aggravated perjury while testifying during the guilt-innocence
phase of his trial.  Rule
33.1 of the Texas Rules of Appellate Procedure governs preservation of error,
and states, in part:

(a) In General.–As a
prerequisite to presenting a complaint for appellate review, the record must
show that:

 

(1)  
the
complaint was made to the trial court by a timely request, objection, or motion
that:

 

(A) stated the
grounds for the ruling that the complaining party sought from the trial court
with sufficient specificity to make the trial court aware of the complaint,
unless the specific grounds were apparent from the context;

 

Tex. R. App. P.
33.1.

            This rule encompasses the concept of “party
responsibility.”  Reyna v. State, 168 S.W.3d 173, 176 (Tex. Crim. App.
2005).  In other words, “[t]he complaining party bears the responsibility of
clearly conveying to the trial judge the particular complaint, including the
precise and proper application of the law as well as the underlying
rationale.”  Id. at 177.  “To avoid forfeiting a complaint on appeal,
the party must ‘let the trial judge know what he wants, why he thinks he is
entitled to it, and to do so clearly enough for the judge to understand him at
a time when the judge is in the proper position to do something about it.’”  Pena
v State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting Lankston v.
State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  This method gives the
trial court and the opposing party a chance to correct the error.  Id. 
“Whether a party’s particular complaint is preserved depends on whether the
complaint on appeal comports with the complaint made at trial.  In making this
determination, we consider the context in which the complaint was made and the
parties’ shared understanding at that time.”  Id. (footnote omitted).

During the time that these four
witnesses testified, defense counsel made no objections that any part of their
testimony constituted either perjury or aggravated perjury.  Consequently, the
complaints are not preserved for appellate review.  See Tex. R. App. P. 33.1.  In addition,
there is no evidence in the record to show that these four witnesses were
lying.  Issues two through five are overruled.

 

C. Admission of Testimony Under Rule 609(a)

            In issues six and eight, Reyna contends that the
testimony of Michelle Robertson and Kimberly Powell was inadmissible under
Texas Rule of Evidence 609(a).  Rule 609(a) allows a person to impeach a
witness’s credibility with evidence of the witness’s conviction for a felony or
a crime involving moral turpitude.  See Tex. R. Evid. 609(a).  Robertson testified she was presently
on felony probation for possession of a controlled substance and tampering with
evidence.  She had three prior felony convictions in Louisiana that included
“two drug charges and one damaging government property.”  On cross-examination,
she stated she had been “charged with prohibited substance in a correctional
facility” and that she had also been “charged” with two counts of prostitution.

Nothing in the record indicates defense
counsel was prevented from impeaching Robertson’s credibility with either her
prior felony convictions or any other charges that were brought against her. 
In addition, nothing in the record indicates defense counsel was prevented from
impeaching Powell’s credibility with any prior conviction that she may have
had.  Thus, there was no violation of rule 609(a).  Issues six and eight are
overruled.

D. Admission of Testimony Under Rule 613(b)

            In issue seven, Reyna contends Michelle
Robertson’s testimony was inadmissible under Texas Rule of Evidence 613(b). 
“Rule of Evidence 613(b), which creates an exception to Rule 608(b),[[2]]
provides that a witness may be impeached by using extrinsic evidence to show
bias or interest.”  Billodeau v. State, 277 S.W.3d 34, 40 (Tex. Crim.
App. 2009).  Specifically, this rule provides:

In impeaching a
witness by proof of circumstances or statements showing bias or interest on the
part of such witness, and before further cross-examination concerning, or
extrinsic evidence of, such bias or interest may be allowed, the circumstances
supporting such claim or the details of such statement, including the contents
and where, when and to whom made, must be made known to the witness, and the
witness must be given an opportunity to explain or to deny such circumstances
or statement.  If written, the writing need not be shown to the witness at that
time, but on request the same shall be shown to opposing counsel.  If the
witness unequivocally admits such bias or interest, extrinsic evidence of same
shall not be admitted.  A party shall be permitted to present evidence
rebutting any evidence impeaching one of said party’s witnesses on grounds of
bias or interest.

 

Tex. R. Evid.
613(b).

            Nothing in this record shows that defense
counsel was prevented from impeaching Robertson by use of extrinsic evidence to
show her bias or interest.  Defense counsel was allowed to cross-examine her
concerning whether she entered into a plea agreement with the State in exchange
for her testimony against Reyna.  We hold there was no violation of rule
613(b).  Issue seven is overruled.

E. Improper Investigation

            In issue nine, Reyna contends that the
State’s “improper investigation” denied him due process and a fair trial.  He
calls our attention to articles 2.01 and 2.03(b) of the Texas Code of Criminal
Procedure.  Article 2.01 states, in relevant part:  “It shall be the primary
duty of all prosecuting attorneys, . . . not to convict, but to see that
justice is done.  They shall not suppress facts or secrete witnesses capable of
establishing the innocence of the accused.”  Tex.
Code Crim. Proc. Ann. art. 2.01 (West 2005).  Article 2.03(b) states, in
relevant part:  “It is the duty of the trial court, the attorney representing
the accused, the attorney representing the state and all peace officers to so
conduct themselves as to insure a fair trial for both the state and the
defendant, not impair the presumption of innocence, . . . .”  Id. §
2.03(b).  Reyna argues the State failed to call Debra Oscar and Ricardo Reyes
to testify at an examining trial and at the guilt-innocence phase of his trial.

            We note that defense counsel did not object
to the State’s failure to call either Oscar or Reyes as witnesses.  Thus, the
complaint is not preserved for appellate review.  See Tex. R. App. P. 33.1.  Nevertheless,
the evidence showed that Oscar and Reyes were present in the vacant lot before,
during, and after Licoscos’s murder.  Even though the appellate record does not
indicate why the State did not call them to testify, Kimberly Powell testified
Reyes was “passed out drunk” and was not involved in the fight between Reyna
and Licoscos.  Officer Rodriguez, while at the crime scene, contacted Oscar and
Reyes.  He stated that Oscar “was passed out[,]” and Reyes “was very, very
intoxicated” and “had no clue what was going on.”

            Thus, it is reasonable to conclude that the
prosecution may have determined that because of their intoxication, Oscar and
Reyes were incapable of testifying about the events surrounding Licoscos’s
murder.  Consequently, neither would have any information establishing Reyna’s
innocence.  The State’s failure to call them as witnesses could not have
constituted suppression of facts or the secreting of witnesses by the State. 
In addition, there is no evidence to show that the State secreted these
witnesses or suppressed any facts.  We hold there is no violation of articles
2.01 or 2.03(b).  Issue nine is overruled.

F. Denial of Pretrial Application for Writ of Habeas
Corpus

In issue ten, Reyna contends the trial
court abused its discretion in denying his amended application for writ of
habeas corpus. 

1. Background

            On August 28, 2007, the trial court held a
hearing on Reyna’s pro se, pretrial amended application for writ of habeas
corpus.  During the hearing, Reyna told the trial court that he was “claiming
three grounds” for relief.  First, he complained he did not receive an
examining trial.  Second, he complained he was not served with a certified copy
of the indictment.[3] 
And, third, he complained that on March 29, 2007, he filed a pro se, pretrial
application for writ of habeas corpus, “and the State failed to exercise its
due diligence and issue a process writ of habeas corpus, setting an immediate
speedy hearing on the merits and rule on the writ. . . .”  After hearing
Reyna’s complaints, the trial court denied relief.

2. Standard of Review and Applicable Law

            We review a trial court’s decision to grant
or deny a writ of habeas corpus for an abuse of discretion.  Ex parte
Wheeler, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); Jaime v. State,
81 S.W.3d 920, 925 (Tex. App.—El Paso 2002, pet. ref’d).  To prevail on a writ
of habeas corpus, the proponent must prove the allegations by a preponderance
of the evidence.  Ex parte Cummins, 169 S.W.3d 752, 757 (Tex. App.—Fort
Worth 2005, no pet.); see Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim.
App. 1995).

 

            An accused “may use a pretrial writ of habeas
corpus only in very limited circumstances.”  Ex parte Smith, 178 S.W.3d
797, 801 (Tex. Crim. App. 2005); see Ex parte Weise, 55 S.W.3d
617, 619 (Tex. Crim. App. 2001).  The accused may:  (1) “challenge the State’s
power to restrain him at all;” (2) “challenge the manner of his pretrial
restraint, i.e., the denial of bail or conditions attached to bail;” and
(3) “raise certain issues which, if meritorious, would bar prosecution or
conviction.”  Smith, 178 S.W.3d at 801.  A pretrial writ of habeas
corpus may also be used “to challenge the jurisdiction of the court if the face
of the indictment shows that any prosecution is barred by the statute of
limitations.”  Id. at 802.  “[A] pretrial writ application is not
appropriate when resolution of the question presented, even if resolved in
favor of the applicant, would not result in immediate release.”  Weise,
55 S.W.3d at 619.

3. Analysis

With respect to Reyna’s complaint that
he was not served with a certified copy of the indictment, we note that on
December 7, 2006, the trial court held an arraignment during which the
presiding judge asked Reyna, “Have you received a copy of the indictment that
was filed against you?”  To this, Reyna said, “Yes, Your Honor.  On November the
30th.”  The judge read the indictment to Reyna and then asked him if he
understood “what the State is accusing you of?”  Reyna replied in the
affirmative and pleaded “[n]ot guilty[.]”  Reyna did not inform the trial court
that the copy of the indictment was not certified.  Furthermore, he does not
show that the purported failure to serve him with a certified copy of the
indictment “would have resulted in his immediate release.”  See id.

 

Concerning his failure to receive an
examining trial, the code of criminal procedure provides, in relevant part: 
“The accused in any felony case shall have the right to an examining trial before
indictment. . . .”  Tex. Code Crim.
Proc. Ann. art. 16.01 (West 2005) (emphasis added).  At the time the
trial court heard Reyna’s amended application for writ of habeas corpus, he had
already been indicted and, therefore, no longer had “a right” to an examining
trial.  See id.

With regard to Reyna’s original
application for writ of habeas corpus, the record does not show why he did not
receive an “immediate speedy hearing” or a ruling on the merits.  However, even
if all three grounds for relief (i.e., those grounds for relief that he raised
at the hearing on his amended application for writ of habeas corpus) were
resolved in his favor, he does not show how any of these grounds for relief
would have either resulted in his immediate release or would have barred the
prosecution against him.  See Smith, 178 S.W.3d at 801; Weise, 55
S.W.3d at 619.  We therefore hold the trial court did not abuse its discretion
in denying relief.  Issue ten is overruled.

G. Motion to Suppress

            In issue eleven, Reyna contends the trial
court abused its discretion by denying his motion to suppress.

1. Standard of Review

            In reviewing the trial court’s ruling on a
motion to suppress, we apply a bifurcated standard of review.  St. George v.
State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citing Ford v. State,
158 S.W.3d 488, 493 (Tex. Crim. App. 2005)).  Appellate courts “should afford
almost total deference to a trial court’s determination of the historical facts
that the record supports especially when the trial court’s fact findings are
based on an evaluation of credibility and demeanor.”  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We “afford the same amount of
deference to trial courts’ rulings on ‘application of law to fact questions,’
also known as ‘mixed questions of law and fact,’ if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor.”  Id. 
“We conduct a de novo review of evidence when the resolution of mixed
questions of law and fact do not turn on an evaluation of credibility and
demeanor.”  St. George, 237 S.W.3d at 725 (citing Guzman, 955
S.W.2d at 89).  We review the trial court’s decision for an abuse of
discretion.  State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). 
“We view the record in the light most favorable to the trial court’s conclusion
and reverse the judgment only if it is outside the zone of reasonable
disagreement.”  Id.  We will sustain the trial court’s ruling if the
ruling “is reasonably supported by the record and is correct on any theory of
law applicable to the case.”  Id. (citing Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990)).  The “deferential standard of review
in Guzman also applies to a trial court’s determination of historical facts
when that determination is based on a videotape recording admitted into
evidence at a suppression hearing.”  Amador v. State, 221 S.W.3d 666,
673 (Tex. Crim. App. 2007).

            When a trial court makes explicit fact
findings, we determine “whether the evidence (viewed in the light most
favorable to the trial court’s ruling) supports these fact findings.”  State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  We then review “the
trial court’s legal ruling de novo unless the trial court’s
supported-by-the-record explicit fact findings are also dispositive of the
legal ruling.”  Id.  

2. The Suppression Hearing

            During the suppression hearing, Reyna sought
to suppress all statements that he made to the police on the grounds he did not
knowingly, intelligently, and voluntarily waive his rights under article 38.22
of the Texas Code of Criminal Procedure.  Reyna did not testify at the
suppression hearing, and the defense did not call any witnesses to testify on
his behalf.

a.   
Reyna’s Video-taped Statement

In the afternoon following Licoscos’s
murder, Reyna gave a video-taped statement to Detectives Garcia and Revis.  A
videotape of the statement was played for the trial court during the
suppression hearing.  It showed that before the detectives began interrogating
Reyna, Detective Revis gave him a preprinted form that contained the warnings[4]
required by article 38.22 of the Texas Code of Criminal Procedure.  Detective
Revis read the warnings to Reyna, and after reading each warning, he asked
Reyna if he understood that particular warning.  Reyna answered in the
affirmative each time Detective Revis asked him if he understood the particular
waning, and Reyna wrote his initials next to each of these warnings.  After
Detective Revis finished reading the warnings to Reyna, he asked Reyna two
separate questions:[5] 
“Do you understand these rights?” and “Do you understand that you are being
video recorded?”  In response to each question, Reyna stated that he
understood, and he wrote his initials next to each question.  Afterwards, the
detectives began interrogating him about the murder.  The videotape showed that
Reyna did not ask for a lawyer and that he did not ask to terminate the
interview.

b. Detective Garcia’s Testimony

            In the morning following Licoscos’s murder,
Officer Felts notified Detective Garcia that he had placed Reyna in the back
seat of his patrol car.  Detective Garcia went to that location and asked Reyna
if he wanted to talk to him at the police station.  Reyna agreed to go to the
police station.  Reyna was taken to the station, where he gave his video-taped
statement.  Detective Garcia testified that before they began the
interrogation, Detective Revis gave Reyna the preprinted form[6]
and read the warnings to him.  Detective Garcia stated that Reyna understood
his rights and that Reyna wrote his initials next to each right, indicating he
understood them.  At the bottom of the preprinted form above the signature line
appeared the following paragraph:  “I HAVE KNOWINGLY, INTELLIGENTLY, AND
VOLUNTARILY WAIVED THE RIGHTS LISTED ABOVE AND I HAVE NOT BEEN COERCED,
PROMISED ANYTHING, OR THREATENED BY ANYONE TO MAKE THIS STATEMENT.”  The
videotape showed that neither detective read that statement to Reyna prior to
beginning the interrogation.  Furthermore, Detective Garcia testified the
aforementioned statement was never read to Reyna, and Reyna’s initials do not
appear next to it.

Detective Garcia stated Reyna did not
ask for a lawyer and that he did not ask to terminate the interview.  In
addition, Detective Garcia testified he neither intimidated nor threatened
Reyna.             When the prosecutor asked Detective Garcia, “He [Reyna] did
give a statement on that video that he thoroughly understood his Miranda
warnings, correct?”, he said, “That’s correct.”  Next, the prosecutor asked
him, “And that he [Reyna] waived them[?]”, he said, “Yes, sir.”

            Detective Revis testified he read the
warnings on the preprinted form to Reyna, who placed his initials at the left
of each warning.  He testified Reyna gave no “indication that he was being
forced to comply” or that “this was involuntary.”  Reyna never told Detective
Revis that “he was being threatened[.]”  He testified he was in the process of
obtaining Reyna’s arrest warrant “at or around the time” Reyna “made contact with
Officer Felt” and “being taken to the [police] station . . . .”  Detective
Revis testified Reyna gave no “indication that the statement he was making was
in any way involuntary[.]”

            After hearing the testimony and arguments
from both sides, the trial court denied the motion to suppress.  We set out in
full the trial court’s findings of fact and conclusions of law as follows:

The Court makes the following findings of fact:

1. The Defendant
voluntarily accompanied Detective R.L. Garcia to the police department.

 

2. The Defendant was
told that he was free to leave.

 

3. The Defendant
never requested to leave.

 

4. Detective TK Revis
informed the defendant he had a right to remain silent and not make any
statement, that any statement made could be used as evidence against him in
court, that he had the right to hire a lawyer and have a lawyer present prior
and during any questioning, that he could have an appointed lawyer if he could
not afford one, and that he could terminate the interview at any time.

 

5. The defendant
acknowledged his rights by placing his initials on the rights sheet.

 

6. The defendant
acknowledged on the sheet that he understood his rights and knew he was being
video recorded.

 

7. The Defendant did
not ask for a lawyer.

 

8. The Defendant was
not threatened or intimidated.

 

The Court makes the
following conclusions of law:

 

1. The Defendant was
not under arrest at the time his statement was given. 

 

2. The Defendant was
informed of his rights under Miranda and Texas Code of Criminal Procedure,
article 38.22.

 

3. The Defendant’s
statement was voluntarily given.

 

            3. Applicable Law and Analysis

a.   
Whether Detectives Garcia and Revis Engaged in
Overreaching

A
confession is involuntary under the Due Process Clause “only if there was
official, coercive conduct of such a nature that any statement obtained thereby
was unlikely to have been the product of an essentially free and unconstrained
choice by its maker.”  Alvarado v. State, 912 S.W.2d 199, 211 (Tex.
Crim. App. 1999).  Statements that courts have found involuntary under the Due
Process Clause involve the crucial element of police overreaching and involve
fact scenarios in which the suspect was subjected to threats, physical abuse,
or extended periods of interrogation without rest or nourishment.  See
Oursbourn v. State, 259 S.W.3d 159, 170–71 (Tex. Crim. App. 2008)
(collecting cases).  Absent coercive police activity, a statement is not
involuntary within the meaning of the Due Process Clause even if it was not the
product of a meaningful choice by its maker.  Id. at 170 (citing Colorado
v. Connelly, 479 U.S. 157, 164 (1986)).   Article 38.22 of the Texas Code
of Criminal Procedure is likewise aimed at protecting a suspect from police
overreaching.  Id. at 172.  Specifically, article 38.22, section 6
provides that only voluntary statements may be admitted in evidence.  See
Tex. Code Crim. Proc. Ann. art.
38.22 § 6 (West 2005).  This statute works in tandem with article 38.21 of the
Texas Code of Criminal Procedure, which provides that an accused's statement
may be used in evidence against him “if it appears that the same was freely and
voluntarily made without compulsion or persuasion.”  Id. § 38.21. 
Claims of involuntariness under these statutes can be, but need not be,
predicated on police overreaching of the sort required under due-process
analysis.  Oursbourn, 259 S.W.3d at 172.  Under articles 38.21 and
section 6 of article 38.22, we may consider, in addition to any allegedly
coercive police conduct, factors such as the suspect's youth, intoxication,
mental retardation, or other disability that would not raise a federal
due-process claim.  Id. at 172–73.

            “‘Voluntariness' under both constitutional
and state law doctrines is to be measured according to the totality of the
circumstances.”  Smith v. State, 779 S.W.2d 417, 427 (Tex. Crim. App.
1989).  Viewing the evidence in the light most favorable to the trial court's
finding, we find nothing in this record that could reasonably be considered
police overreaching of the sort that would render a statement involuntary in
either the due process or the statutory sense.  Therefore, we hold that Reyna's
video-taped statement was not the product of police overreaching.  See
Oursbourn, 259 S.W.3d at 170, 172–73.

b.   
Whether
Reyna Knowingly, Intelligently, and Voluntarily Waived His Rights

 

            Article 38.22 “prohibits the use of oral
statements made as a result of custodial interrogation unless, inter alia,
an electronic recording is made of the statement, Miranda warnings are given, and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warnings.”  Turner
v. State, 252 S.W.3d 571, 583 (Tex. App.—Houston [14th Dist.] 2008, pet.
ref'd); see Tex. Code Crim. Proc.
Ann. art. 38.22, § 3(a)(1)–(2) (West 2005).[7] 
An inquiry into the waiver of Miranda rights has two distinct
dimensions.  Ripkowski v. State, 61 S.W.3d 378, 384 (Tex. Crim. App.
2001) (citing Colorado v. Spring, 479 U.S. 564, 573 (1987)).  First, the
waiver must be “‘voluntary in the sense that it was the product of a free and
deliberate choice rather than intimidation, coercion, or deception.’”  Id.
(quoting Spring, 479 U.S. at 573).  Second, the suspect must have made
the waiver “‘with a full awareness both of the nature of the right being
abandoned and the consequences of the decision to abandon it.’”  Id.
(quoting Spring, 479 U.S. at 573).  The “Constitution does not require
that a criminal suspect know and understand every possible consequence of a
waiver of the Fifth Amendment privilege.”  Spring, 479 U.S. at 574.  It
is enough that a “suspect knows that he may choose not to talk to law
enforcement officers, to talk only with counsel present, or to discontinue
talking at any time.”  Id.

            Under articles 38.21 and 38.22 and their predecessors,
fact scenarios that have raised a state-law claim of involuntariness include
the following:  (1) the suspect was ill and on medication and that fact may
have rendered his confession involuntary; (2) the suspect was mentally retarded
and may not have knowingly, intelligently and voluntarily waived his rights;
(3) the suspect lacked the mental capacity to understand his rights; (4) the
suspect was intoxicated, and “did not know what he was signing”; (5) the
suspect was confronted by the brother-in-law of his murder victim and beaten;
and (6) “the suspect was returned to the store he broke into ‘for questioning
by several’” armed persons.  Oursbourn, 259 S.W.3d at 172–73.  As the
sole judge of the credibility of the evidence and witnesses, the trial court
had the discretion to believe the testimony of Detectives Garcia and Revis that
Reyna understood his rights.  The testimony and the videotape established
that:  (1) before Reyna made his statement, Detective Revis gave him the article
38.22 warnings on a pre-printed form; (2) Detective Revis read the warnings to
him; and (3) Reyna indicated to Detectives Garcia and Revis that he understood
his rights.

            The videotape also showed Reyna:  (1) was
coherent; (2) understood what Detective Revis was saying to him; (3) was
thinking clearly; (4) was calm and cooperative, not sleepy or confused; (5)
never asked to speak with an attorney; and (6) never asked to terminate the
interview.  Moreover, the evidence does not show that Reyna could not
understand his rights because he was ill or on medication, mentally disabled,
lacked the mental capacity to understand his rights, intoxicated, or under the
influence of drugs.  Thus, nothing in the videotape showed that Reyna did not
knowingly, intelligently, and voluntarily waive his rights.  The videotape
presents indisputable visual evidence supporting the testimony of Detectives
Garcia and Revis.

            Accordingly, Reyna’s contention that he did
not knowingly, intelligently, and voluntarily waive his rights is not supported
by the evidence.  The trial court did not abuse its discretion in concluding
that Reyna’s video-taped statement was voluntarily given.

c.   
Did
Reyna Implicitly or Expressly Waive His Rights?

            It is undisputed that Reyna
failed to expressly waive his rights.  The waiver of rights discussed in
article 38.22 § 3(a)(2)[8]
“may be inferred from the actions and words of the person interrogated.”  Barfield
v. State, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989), overruled on other
grounds, Zimmerman v. State, 860 S.W.2d 89 (Tex. Crim. App. 1993).  “A
waiver may be found in an express written or oral statement or, in at least
some cases, may be inferred from the actions and words of the person
interrogated.”  Mays v. State, 726 S.W.2d 937, 946 (Tex. Crim. App. 1986). 
As the court of criminal appeals stated in Barfield, “[w]e do not . . .
interpret the oral confession statute to require an express verbal statement
from an accused that he waives his rights prior to giving the statement.”  Barfield,
784 S.W.2d at 40–41.  “In reaching the voluntariness of a confession,” we look
“at the totality of circumstances.”  Id. at 41; see also Berry v.
State, 582 S.W.2d 463, 465 (Tex. Crim. App. (Tex. Crim. App. 1979)).  Examining
the totality of the circumstances surrounding Reyna’s video-taped statement, we
note that before he made this statement, Detective Revis read him the warnings
from the preprinted form and that Reyna told him and Detective Garcia he
understood each warning.  After Detective Revis read him the warnings, Reyna
began to answer the detectives’ questions.  He did not ask to terminate the
interview, did not ask for an attorney, and did not ask to leave.  Thus, we
conclude that Reyna implicitly waived his rights knowingly, intelligently, and
voluntarily as required by article 38.22.  See Turner, 252 S.W.3d at 583
(holding that defendant validly waived his rights when he understood his rights
and proceeded to answer questions); Hargrove v. State, 162 S.W.3d 313,
318–19 (Tex. App.—Fort Worth 2005, pet. ref'd) (finding accused validly waived
rights despite lack of explicit waiver); State v. Oliver, 29 S.W.3d 190,
193 (Tex. App.—San Antonio 2000, pet. ref'd) (finding that, despite lack of
explicit waiver, accused knowingly, intelligently, and voluntarily made a statement
after reading his rights, indicating he understood them, and proceeding without
hesitation to discuss circumstances surrounding the murder).  Such an implicit
waiver is valid under article 38.22 and under the United States and Texas
Constitutions.  Turner, 252 S.W.3d at 583–84.  Thus, the trial court did
not abuse its discretion in finding he validly waived his legal rights prior to
giving his video-taped statement.  Therefore, we hold the
trial court did not abuse its discretion in denying the motion to suppress. 
Issue eleven is overruled.

 

 

III. Supplemental Brief

            In his supplemental brief,
Reyna contends the police did not have probable cause to arrest him.  We
disagree.

Detectives Garcia and Revis arrested
Reyna pursuant to an arrest warrant.  When reviewing a magistrate’s decision to
issue an arrest warrant, we apply a highly deferential standard in keeping with
the constitutional preference for a warrant.  Rodriguez v. State, 232
S.W.3d 55, 59–60 (Tex. Crim. App. 2007); Swearingen v. State, 143 S.W.3d
808, 810–11 (Tex. Crim. App. 2004).  Consequently, a reviewing court should not
invalidate a warrant by interpreting the affidavit or complaint in a hyper
technical manner.  Illinois v. Gates, 462 U.S. 213, 236 (1983); Rodriguez,
232 S.W.3d at 59.  Instead, we consider the totality of the circumstances in
determining whether the magistrate had a substantial basis for concluding that
probable cause existed to support the issuance of the warrant.  Gates,
462 U.S. at 238; Ramos v. State, 934 S.W.2d 358, 362–63 (Tex. Crim. App.
1996).

            An arrest warrant must provide the magistrate
with sufficient information to support an independent judgment that probable
cause existed for the warrant.  McFarland v. State, 928 S.W.2d 482, 509–10
(Tex. Crim. App. 1996), overruled on other grounds by Mosely v. State,
983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998).  The sufficiency of an
affidavit for an arrest warrant is limited to the four corners of the
affidavit, viewing the affidavit in a common sense and realistic manner, and
recognizing the magistrate’s discretion to draw reasonable inferences.  See
Moss v. State, 75 S.W.3d 132, 140 (Tex. App.—San Antonio 2002, pet. ref’d);
see also Rodriguez, 232 S.W.3d at 61; Davis v. State, 202 S.W.3d
149, 154 (Tex. Crim. App. 2006).

            Probable cause requires the affiant to
demonstrate that there is a probability that the accused committed an offense,
not that the evidence proves the suspect’s guilt beyond a reasonable doubt.  Moss,
75 S.W.3d at 140.  Two of the circumstances considered when the affiant relies
on an informant’s representations include the informant’s reliability or
veracity and the basis of the informant’s knowledge.  See Gates, 462
U.S. at 233; State v. Ozuna, 88 S.W.3d 307, 310 (Tex. App.—San Antonio
2002, pet. ref’d); Martin v. State, 67 S.W.3d 340, 344 (Tex.
App.—Texarkana 2001, pet. ref’d).  The validity of the affidavit does not
require proof of both, and a deficiency in one may be offset by a strong
showing of the other.  Martin, 67 S.W.3d at 344.

            Moreover, as long as the affidavit sets forth
the affiant’s belief that the informant was credible or that his or her
information was reliable, the affidavit need not disclose the affiant’s personal
observations.  Ozuna, 88 S.W.3d at 310.  The trial court considers
several factors in determining the informant’s credibility:  (1) whether the
informant presented first-hand observations; (2) the degree of detail provided
by the informant; (3) whether reasonable corroboration of the informant’s
statement existed; and (4) whether the informant testified at the
probable-cause hearing.  Id. at 311.

            In this case, the affiant, Officer T.K.
Revis, stated in his affidavit, in relevant part, that he had probable cause to
believe that Reyna committed the offense of murder based upon:

1.) Offense report
06-043709, dated 07-25-06, written by Sgt. M. Rodriguez #1074, CCPD.  Report
indicates that at 1:42 a.m. he responded to the 1600 block of Leopard for a
stabbing.  He was flagged down by Kimberly Powell in front of 1608 Leopard
Street, Corpus Christi, Nueces County, Texas.  Powell advised that the stabbing
victim was laying in the vacant lot next to the building and directed him
there.  Sgt. Rodriguez found the victim, later identified as Paul Licoscos had
been stabbed several times and did not appear to be breathing.  EMS arrived and
found that the victim had no pulse.  Powell advised that she was with Licoscos,
Debra Oscar, Ricardo Reyes and a black male.  That they were all drinking beer
there in the vacant lot.  Before midnight Paul and the black male got into a
fist fight over the black male accusing Paul of not taking care of his
girlfriend [Debra Oscar].  They shook hands and everything was fine.  At about
1:20 a.m. she [Powell] was returning from the Shell station and she saw the
black male stab Paul several times with a pair of scissors.  She fled the area
because the black male was chasing her.  Paul Licoscos was transported to the
Nueces County Morgue by the Medical Examiner transport.

 

2.) Statement’s [sic]
from Kimberly Powell in which she identifies Samuel Reyna, dob 04-21-54 from a
6 photo lineup of men as the man she saw stab Paul with the scissors in the
back several times and the man she tried to pull off of Paul when he was
stabbing him.

 

3.) Statement from
Debra Oscar in which she indicates that before midnight she was with Paul and a
guy she knew as Sam.  That they were all 3 drinking beer up under 286 across
from the Shell station.  That is the last thing that she remembers.  She
identified Samuel Reyna dob 04-21-54 from a 6 photo color photo lineup of men
as the man she knew as Sam.

 

4.) Report from
Medical Examiner Dr. Fernandez which will indicate that Paul Licoscos died as a
result of penetrating stab wounds to the torso.

 

Officer Revis signed this affidavit before a magistrate
on July 25, 2006.

            After considering the totality of the
circumstances, we conclude that the magistrate had a substantial basis for
determining that probable cause existed to support the issuance of Reyna’s
arrest warrant.  We note that even though Officer Revis does not specifically
mention anything about Powell’s reliability or veracity, he does state the
basis of her knowledge; i.e., he stated she was present at the scene and saw
Licoscos get stabbed by Reyna.  She identified Reyna from a photo lineup as the
person she saw stab Licoscos several times.  In addition, Oscar’s statement
showed that prior to Licoscos’s murder, she was with him and a man who she knew
as “Sam.”  She identified “Sam” from a photo lineup as Samuel Reyna.

Moreover, Officer Revis noted that
Officer Rodriguez had been “flagged down” by Powell, who directed him to the
location of Licoscos’s body.  Officer Rodriguez saw that Licoscos had been
stabbed and did not appear to be breathing.  In Davis v. State, the
court of criminal appeals stated that “[o]bservations reported to the affiant
by other officers engaged in the investigation can constitute a reliable basis
for issuing a warrant.”  202 S.W.3d 149, 156 n.20 (Tex. Crim. App. 2006)
(citing United States v. Ventresca, 380 U.S. 102, 108–09 (1965)).

Viewing the affidavit in a common sense
and realistic manner, and recognizing the magistrate’s discretion to draw
reasonable inferences, we conclude the affidavit provided the magistrate with
sufficient information to support an independent judgment that probable cause
existed to support the issuance of the warrant.  The supplemental issue is
overruled. 

IV. Conclusion

            We affirm the trial court’s judgment.

 

 

                                                                                         ROSE
VELA

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the  

4th day of August, 2011.









[1]
During the guilt-innocence phase, the prosecutor introduced the videotape of
Reyna’s interview into evidence as State’s exhibit 103.

 





[2]
“Rule of Evidence 608(b) provides that a witness’s credibility may not be
impeached with specific instances of the witness’s conduct other than a
criminal conviction as provided in rule 609(a).”  Billodeau v. State,
277 S.W.3d 34, 39–40 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 608(b)).





[3]
See Tex. Code Crim. Proc. Ann.
arts. 25.01, 25.02 (West 2009) (requiring that the accused in every felony case
be served with a certified copy of the indictment).





[4]
The warnings contained on the preprinted form are as follows:  (1) “You have
the right to remain silent and not make any statement at all;” (2) “Any
statement you make may be used as evidence against you in court;” (3) “You have
the right to have a lawyer present to advise you prior to and during any questioning;”
(4) “If you are unable to employ a lawyer, you have the right to have a lawyer
appointed to advise you prior to and during any questioning;“ and (5) “You have
the right to terminate the interview at any time.” 

 





[5]
These two questions appear on the preprinted form immediately below the five
warnings.

 





[6]
During the suppression hearing, the trial court admitted the preprinted form
into evidence as State’s exhibit 1.





[7]
Article 38.22 § 2(a) requires that an accused receive the following warnings: 
(1) “he has the right to remain silent and not make any statement at all and
that any statement he makes may be used against him at his trial;” (2) “any
statements he makes may be used against him in court;” (3) “he has the right to
have a lawyer present to advise him before and during the questioning;” (4) “if
he is unable to employ a lawyer, he has the right to have a lawyer appointed to
advise him prior to and during any questioning;” and (5) “he has the right to
terminate the interview at any time[.]”  Tex.
Code Crim. Proc. Ann. art. 38.22 § 2(a) (West 2005).  Article 38.22 § 3
“categorically provides, ‘No oral or sign language statement of an accused made
as a result of custodial interrogation shall be admissible against the accused
in a criminal proceeding unless’ the five statutory conditions are met.”  Nguyen
v. State, 292 S.W.3d 671, 681 (Tex. Crim. App. 2009) (quoting Tex. Code Crim. Proc. Ann. art. 38.22,
§ 3(a)).  Article 38.22 § 3(a)(2) requires that an oral statement resulting
from custodial interrogation must contain a warning informing the accused of
his or her rights, and that there be a knowing, intelligent, and voluntary
waiver of those rights.    





[8]
Article 38.22, section 3(a)(2) states, “prior to the statement but during the
recording the accused is given the warning in Subsection (a) of Section 2 above
and the accused knowingly, intelligently, and voluntarily waives any rights set
out in the warning[.]”  Tex. Code Crim.
Proc. Ann. art. 38.22 § 3(a)(2).